# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN RUTLEDGE (HALL), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 4:12CV1908NCC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Kathleen Rutledge (Hall) (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 et seq. Plaintiff has filed a brief in support of the Complaint. Doc. 16. Defendant has filed a brief in support of the Answer. Doc. 24. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 26.

## I.
## PROCEDURAL HISTORY

Plaintiff's previous application for benefits was denied by an ALJ on November 22, 2006. Tr. 9. Plaintiff filed her current application for DIB on December 20, 2007, alleging a disability onset date of November 17, 2005. Tr. 167-79. Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge (ALJ). Tr. 94-100, 105. A hearing was held before an ALJ. Tr. 110-29. In a decision dated May 20, 2007, the ALJ found Plaintiff

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

not disabled.  Tr. 77-85.  Plaintiff filed a request for review with the Appeals Council, which remanded the matter.[2]  Tr. 87-90.  On December 9, 2010, Plaintiff appeared at a second hearing before the same ALJ.  Tr. 28-46.  On March 24, 2011, the ALJ issued a second decision denying Plaintiff benefits.  Tr. 9-20.  The Appeals Council denied Plaintiff's request for review.  Tr. 1-3. As such, the ALJ's second decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

---

[2] The Appeals Council directed the ALJ to reconsider Plaintiff's RFC and to obtain the testimony of a vocational expert to clarify the effect of Plaintiff's limitations on her occupational base.

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step

five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel,

228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the

plaintiff's appearance and demeanor at the hearing.  See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints.  See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence.  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski factor."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).  The ALJ need only acknowledge and consider those factors.  See id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.

Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was born in 1961, claimed she was disabled due to back and neck pain and fibromyalgia. The ALJ found that res judicata precluded Plaintiff's claim prior to November 23, 2006, and, therefore, the time relevant to her determination was from that date through the date Plaintiff was last insured, March 31, 2010. The ALJ further found Plaintiff had not engaged in

substantial gainful activity during the relevant period; she had the severe impairments of obesity, degenerative disc disease, and depression; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined in the Regulations, and was able to carry out simple instructions and non-detailed tasks; she demonstrated adequate judgment to make simple work-related decisions; she was able to adapt to routine/simple work changes, and to take appropriate precautions to avoid hazards; she was able to perform repetitive work according to set procedures, sequence or pace; and she was limited to occasional stooping, kneeling, and crawling.[3] The ALJ further determined that Plaintiff was unable to perform past relevant work, but through the date she was last insured, there were jobs in the national economy which Plaintiff could have performed. As such, the ALJ found Plaintiff not disabled.

---

[3] 20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally, the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185, at *7). Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to point to some medical evidence to support her RFC determination, and because the hypothetical which the ALJ posed to the VE did not adequately capture the concrete consequences of her impairments. Additionally, Plaintiff argues the ALJ failed to give proper consideration to the testimony of Plaintiff's husband, a letter from Plaintiff's mother, and the medical opinions of doctors of record.

**A.    Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination;

where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ considered that, since her alleged onset date, Plaintiff routinely babysat three children under the age of five years old. Tr. 67. Plaintiff also reported that she sewed, did crafts, read, and watched movies, although she no longer did these things often because of a lack of money. She also reported that she "sometimes" watched television, played cards, and saw her grandchildren three to four times a week; she saw friends "maybe" two times a month, went to her parents' house on a regular basis, and went to the store "a couple times" a week; she went outside only to go to the store, visit her parents, or pick up her grandchildren; she sometimes drove, depending on her pain level; and she shopped in stores one or two times a week to buy groceries or office supplies for her husband. Tr. 256-57. Additionally, Plaintiff's daughter-in-law reported that Plaintiff prepared her own meals, although Plaintiff denied doing so. Tr. 15, 218, 225, 243-44. Further, as considered by the ALJ, Plaintiff's husband reported that Plaintiff

cleaned the house and did other household chores, prepared meals, and watched her grandchildren. Tr. 243, 245.

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (ALJ properly considered that claimant watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). Second, the ALJ considered inconsistencies in the record. Tr. 15. For example, at the first hearing, held in September 2009, Plaintiff testified that she babysit her grandchildren, and that she stopped doing that because she could not keep up with them (Tr. 56-57, 66), and at the second hearing, held in December 2010, she testified that she had not done any babysitting (Tr. 31). Additionally, although Plaintiff denied preparing meals (Tr. 218), her husband reported that she did so (Tr. 243). Further, Plaintiff's husband's description of the range of Plaintiff's daily

activities included a much wider range of activities than Plaintiff's description of her daily activities. Specifically, Plaintiff denied doing yard work (Tr. 256), but her husband said she mowed the lawn with a riding lawn mower (Tr. 245). Finally, Plaintiff told Karen Hampton, Ph.D., that she had worked 12-hour days prior to becoming disabled (Tr. 353), but reported to the agency that she worked 8-hour days (Tr. 200). Cf. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (contradictions between claimant's sworn testimony and what she actually told physicians weighs against claimant's credibility).

Third, Plaintiff reported that medication helped her pain. Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). Specifically, a May 7, 2009 progress note states that Plaintiff reported an increase in the dosage of her medication was a "breakthrough." Tr. 411.

Fourth, Plaintiff's testimony and statements to medical providers were inconsistent with the record as a whole. Contradictions between a claimant's sworn testimony and what she actually told physicians weighs against her credibility. See Karlix, 457 F.3d at 748. For example, Plaintiff testified she had crying spells two to three times a week (Tr. 69), but she told Dr. Hampton that she did not usually cry (Tr. 355). Although Plaintiff testified 2005 disc

surgery gave her no relief (Tr. 37), Gurprett Padda, M.D., Plaintiff's surgeon, reported that Plaintiff had "immediate resolution of C6 radicular component pain." Ex. 21F at 176.[4] Also, Plaintiff told doctors that she stopped working after her 2003 car accident (Tr. 307, 353), but her earnings record reflects that she worked after that time (Tr. 178); in fact, she earned $20,664 in 2004 (Tr. 178).

Fifth, although Plaintiff said she used a wheelchair (Tr. 43, 215, 259), no such device was ever prescribed by a doctor. See Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (finding medical records documented that claimant's use of cane was medically necessary).

Sixth, as considered by the ALJ, Plaintiff did not comply with prescribed medical treatment during the relevant period. Tr. 16. See Eichelberger, 390 F.3d at 589 (ALJ properly considered that plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). In particular, Sandra Hoffmann, M.D., reported on January 30, 2008, that "for whatever reason, [Plaintiff] chose to stop [taking] Cymbalta when she started the Lyrica. She said she wanted to see what the Lyrica did by itself." Tr. 350.

Seventh, as considered by the ALJ, despite Plaintiff's complaint of neck pain, she did not return to the surgeon who performed her cervical surgery; and, despite her claim of ongoing sleep problems, Plaintiff did not seek further treatment for sleep apnea to confirm that her CPAP was working correctly (Tr. 44, 69). Also, Plaintiff does not cite any medical records reflecting she had treatment from September 1, 2005, until December 3, 2007, (Doc. 16 at 4), despite

---

[4] This exhibit was not assigned a page number in the administrative record.

claiming she was disabled during that period. Ex. 31F,[5] Tr. 319. <u>See</u> <u>Roberts v. Apfel</u>, 222 F.3d 466, 469 (8th Cir. 2000) (lack of regular treatment for alleged disabling conditions detracts from claimant's credibility); <u>Comstock v. Chater</u>, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (ALJ properly discounted claimant's complaints of pain when medical evidence failed to establish significant back problem).

Eighth, although Plaintiff contends a letter from her mother and observations of her husband and daughter-in-law support her credibility, as considered by the ALJ, these family members were not acceptable medical sources or considered other sources qualified to provide evidence of the severity of a claimant's conditions. <u>See</u> 20 C.F.R. §§ 404.1513(d), 416.913(d) (therapists and nurse practitioners are "other sources" whom may be used to show severity of claimant's impairments). As for the testimony of Plaintiff's husband, an ALJ may discount the testimony of a spouse because he has a financial stake in the outcome of the claimant's case. <u>See</u> <u>Choate v. Barnhart</u>, 457 F.3d, 865, 872 (8th Cir. 2006). Additionally, an ALJ may properly discount opinions of third parties for the same reasons she discounts the opinion of a claimant, including that the opinions are inconsistent with medical evidence of record. <u>See</u> <u>Black v. Apfel</u>, 143 F.3d 383, 387 (8th Cir. 2006).

Ninth, to the extent Plaintiff suggested she had a psychological impairment, she testified she never had any counseling or therapy, and never was hospitalized for a mental impairment. In response to the ALJ's question as to whether she had ever seen a psychologist or psychiatrist, Plaintiff responded, she "did way back but I don't remember who it was." Tr. 49. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. <u>See</u> <u>Roberts</u>, 222 F.3d at 469; <u>Comstock</u>, 91 F.3d at 1146-46.

---

[5] This exhibit was not assigned a page number in the transcript.

Tenth, as considered by the ALJ, objective medical testing did not support Plaintiff's allegations of disabling impairments. Tr. 17. See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is factor for ALJ to consider). For example, a December 13, 2007 MRI of Plaintiff's lumbar spine showed lumbar spine alignment was normal, a slight narrowing at L5-S1, "fairly well hydrated" intervertebral discs at L1-L2 and L-2-L3, degeneration at L3-L5 and L5-S1, a "small broad based protrusion" at L5-S1, and a "very mild bulge" at L4-L5; the "remainder of the lumbar intervertebral discs [did] not demonstrate any evidence of bulging or focal protrusion and there [was] no evidence of central spinal canal stenosis at any of the levels examined." Tr. 324. Also, a December 3, 2007 x-ray of the lumbar spine showed "slightly exaggerated lordotic curvature but otherwise relatively unremarkable. Disc spaces [were] well preserved. Vertebral height, contour, and alignment [were] normal. There [was] some very minimal early osteophytes at L3 and 4, but they [were] very small and unlikely to impinge neural foramina." The impression was a "basically normal L-spine." Tr. 315. A November 11, 2010 x-ray of Plaintiff's lumbar spine showed a "slight calcification" in the abdominal aorta anterior to L-4, and that Plaintiff's lumbar spine was "otherwise negative" with no degenerative changes, fractures, dislocation or disc space narrowing; sacroiliac joints were intact. Tr. 460. An x-ray of the cervical spine, on this same date, showed Plaintiff was maintaining the neck in extension and normal alignment with no degenerative changes down to C6. Tr. 461. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (substantial evidence supported ALJ's decision that claimant had RFC to perform light work, where medical records indicated she suffered mild degenerative changes in her back).

Eleventh, the ALJ considered doctors' observations and findings. In July 2010, the status of her back pain was "good," and she had normal reflexes. Tr. 436. On November 11, 2010, no

limitation of motion was noted in her shoulders, elbows, wrists, and hips; her grip and extremity strength was 5/5, bilaterally; and she had some limitation of motion in both the lumbar and cervical spine. Tr. 464-65. On November 19, 2010, Plaintiff was well-developed and well-nourished; in her extremities, she had no clubbing, cyanosis, or edema; her gait was normal; she could heel-toe walk; her sensation was equal and normal bilaterally in her legs; she could flex her back to sixty degrees; and her grip was good. Tr. 459. See <u>Halverson v. Astrue</u>, 600 F.3d 922, 933 (8th Cir. 2010) (doctor's observations were inconsistent with claimant's allegations of disability).

In conclusion, the court finds that the ALJ properly considered Plaintiff's credibility and that the ALJ's decision, in this regard is based on substantial evidence and consistent with the Regulations and case law.

**B.      Medical Evidence and Plaintiff's RFC:**

Plaintiff contends the ALJ did not properly consider the medical evidence when determining Plaintiff's RFC. The court finds that Plaintiff is incorrect; as discussed above in regard to Plaintiff's credibility, prior to determining Plaintiff's RFC, the ALJ did consider the medical evidence of record, including the observations of doctors and diagnostic test results. Further, as discussed below, the ALJ considered reports of Plaintiff's treating, examining, and consulting doctors.

The ALJ also considered a Physical RFC Assessment of Plaintiff conducted by Harold Kearnes, M.D., in April 2009, and held that this assessment should have less than controlling weight. Tr. 18. Dr. Kearnes reported that Plaintiff had post-traumatic fibromyalgia, and noted that records of Plaintiff's physical examinations had shown *normal* range of motion except for the cervical spine; imaging studies had shown *minor* degenerative disease of both feet and the

lumbar spine; records of Plaintiff's physical examinations showed normal range of motion except for the cervical spine; and imaging studies showed minor degenerative disease in both feet and lumbar spine. Dr. Kearnes' RFC assessment was that Plaintiff could perform less than a full day's work and that she was very limited in what she could do, going back to February 2005. Tr. 399-406.

To the extent Dr. Kearnes opined Plaintiff could do less than a full day's work, Dr. Kearnes was not Plaintiff's treating doctor and relied on the records of others and Plaintiff's subjective reports of pain. See 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (upon evaluating opinion of state agency physician, ALJ will weigh consultant's findings using relevant factors in paragraphs (a) through (e) in 20 C.F.R. § 404.1527 and § 416.927). The court finds, therefore, that substantial evidence supports the ALJ's determination that Dr. Kearnes' opinion was not entitled to controlling weight.

The ALJ also considered a September 25, 2009 RFC evaluation conducted by Kenneth E. Ross, D.O., who treated Plaintiff since 2004, and declined to give Dr. Ross' opinion controlling weight. Tr. 18. Dr. Ross opined that Plaintiff was incapable of low stress jobs; she could sit for 30 minutes, walk for 10 minutes, and sit and stand/walk for less than 2 hours in an 8-hour workday; she could never lift 10 pounds; she needed to take unscheduled breaks 8 times in a workday and rest for 30 minutes before returning to work; she would be absent from work more than 4 days a month; and she needed to lie down for more than 4 hours in an 8-hour workday. Dr. Ross also opined that Plaintiff's depression affected her physical conditions. Tr. 424-28.

Upon failing to give controlling weight to Dr. Ross' opinion regarding Plaintiff's limitations, the ALJ considered that Dr. Ross' opinion was not linked to the medical evidence. Tr. 18. The court notes that there is no diagnostic testing which supports Dr. Ross' opinion. See

<u>Veal v. Bowen</u>, 833 F.2d 693, 699 (7th Cir. 1987) (where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight). <u>See also</u> <u>Travis v. Astrue</u>, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."); <u>Davidson v. Astrue</u>, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006) (ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

Indeed, Dr. Ross reported that Plaintiff had chronic back pain on numerous occasions, including in December 2008 (Tr. 393), January 2009 (Tr. 393), April 2009 (Tr. 411), January 2010 (Tr. 444), February 2010 (Tr. 445), July 2010 (Tr. 447), and November 2010 (Tr. 455), but Dr. Ross' records reflecting Plaintiff had pain are largely based on Plaintiff's subjective complaints. <u>See</u> <u>McCoy v. Astrue</u>, 648 F.3d 605, 617 (ALJ properly discounted doctor's opinion where evaluation was based, at least in part, on claimant's self-reported symptoms; insofar as claimant's self-reported symptoms were found to be less than credible, doctor's report was rendered less credible).

Although Dr. Ross reported that Plaintiff's limitations were based on problems with her lumbar and cervical spine (Tr. 424), as discussed above, Plaintiff's most recent x-ray of the lumbar spine was negative for degenerative changes except for a slight calcification (Tr. 460), and her most recent x-ray of the cervical spine showed Plaintiff was maintaining the neck in extension and normal alignment with no degenerative changes down to C6. (Tr. 461). <u>See</u> <u>Veal v. Bowen</u>, 833 F.2d 693, 699 (7th Cir. 1987) (where diagnoses of treating doctors are not

supported by medically acceptable clinical and laboratory diagnostic techniques, such diagnoses should not be afforded great weight).  To the extent Dr. Ross opined that Plaintiff had psychological limitations, Dr. Ross' treatment notes do not reflect such limitations, and Dr. Ross never referred Plaintiff for any mental health treatment.  See Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (where treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment).

To the extent Dr. Ross indicated by checkmarks on a form that Plaintiff was unable to work, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence.  See Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; SSR 96-2p, 1996 WL 374188 (July 2, 1996).  Although Dr. Ross stated that Plaintiff needed a cane to walk (Tr. 426), he never prescribed one nor does the record reflect that any other doctor did so.  The court finds, therefore, that the ALJ's failure to give controlling weight to Dr. Ross' opinion is based on substantial evidence and consistent with the case law and Regulations.

Further, the ALJ did give some weight to Dr. Ross' opinion as he limited Plaintiff to light and sedentary work which presumes serious limitations.  See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (limitations imposed by ALJ, as reflected in the claimant's RFC, demonstrated that ALJ gave some credit to opinions of treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give

some credit to [the treating doctor's] medical opinions."). The court finds, therefore, that substantial evidence supports the ALJ's determination not to give controlling weight to Dr. Ross' opinion, and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

The ALJ also considered the April 2008 opinion of the state agency medical consultant, Aine Kresheck, Ph.D., who opined that Plaintiff had mild limitations in regard to activities of daily living and maintaining social functioning and had moderate difficulties in the areas of concentration, persistence, and pace. Tr. 369. The ALJ gave some weight to Dr. Kresheck's opinion regarding Plaintiff's concentration, persistence, and pace, but did not give it controlling weight because it was inconsistent with Plaintiff's ability to perform activities of daily living and her ability to function socially; specifically, as discussed above in regard to Plaintiff's credibility. Tr. 16. Further, while state agency consultants are highly regarded for their expertise, see 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i), an ALJ is not bound by the opinions of state agency medical or psychological consultants, see 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). The court finds, therefore, that ALJ gave sufficient reason for failing to controlling weight to Dr. Kresheck's opinion and that his decision, in this regard, is based on substantial evidence.

Further, as for Plaintiff's fibromyalgia, the ALJ considered that Sandra Hoffman, M.D., who saw Plaintiff for a rheumatology consultation, on December 3, 2007, diagnosed Plaintiff with this condition. Dr. Hoffman reported on this date that Plaintiff's hands and wrists were unremarkable; her elbows and shoulders were *mildly* tender; and she had *moderate* limitation of the C-spine, and full range of motion without pain in her hips. Tr. 17, 307-308.

As for Plaintiff's back pain, July 2010 records from St. Anthony's Medical Center reflect that after Plaintiff presented with back pain, she said she felt better and wanted to go home.  Tr. 435-36.  Plaintiff was seen on November 11, 2011, for back pain by Stanley London, M.D.  Dr. London reported that Plaintiff's chief complaint related to her neck and back.  As stated above, Dr. London reported that Plaintiff's extremities had no clubbing, cyanosis, or edema; her gait was "fairly normal"; she could heel and toe walk and squat; she could not hop; and she had difficulty getting on and off the examining table due to her size.  Dr. London reported that a detailed orthopedic and neurological examination of Plaintiff showed her knee jerks, ankle jerks, biceps, triceps and brachial radialis reflexes were equal and active bilaterally; her sensation was equal, bilaterally, in her legs; her straight leg raising was 60 degrees, bilaterally, and produced some pain; she could flex her back to 60 degrees; she had tenderness in the right lower area of her back; her neck movement was mildly restricted; her grip was good and her sensation normal; and her distal pulses were good.  Dr. London also noted Plaintiff's blood pressure was 129/71.  See Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (blood pressure which measures within range of 140-180/90-115 is considered mild or moderate; hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney) (citing 20 C.F.R. pt. 404, subpt, P, app. 1, 4.00 C).  Additionally, Dr. London noted that Plaintiff was moderately obese at 62 inches tall and 227 pounds.  See SSR 02-01p, 2000 WL 628049, at *2-5 ("There is no specific weight or BAI that equates with a 'severe' or a 'not severe' impairment.  . . . Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.").  Tr. 459.

As for Plaintiff's sleep apnea, on December 19, 2007, it was reported that she had *moderate* obstructive sleep apnea, which appeared to be responsive to positive airway pressure.

See Brown, 611 F.3d at 955; Davidson, 578 F.3d at 846. Also, in January 2008, Plaintiff's sleep apnea was reported as moderate and better. Tr. 347.

As for any mental impairments, in April 2008, Karen Hampton, Ph.D., who saw Plaintiff for a consultive examination in April 2008, reported that Plaintiff was oriented and could understand and follow simple directions, while her concentration, pace and persistence for more complex directions was moderately impaired; her verbal reasoning was intact; she had average intelligence and was capable of independently managing any funds awarded her; and Plaintiff's judgment in safety situations and social reasoning were intact. Dr. Hampton also reported that Plaintiff continued to engage in codependent caretaking relationships which added degrees of stress to her life and adaptive coping behavior. Tr. 353-57. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Dr. Hampton opined that Plaintiff had a Global Assessment of Functioning (GAF) of 57, which was in the moderate range.[6] Tr. 356.

_____

[6] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)) (alterations in original). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work). Although "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' ... GAF scores may still be used to assist the ALJ in

As required by the Regulations and case law, upon determining Plaintiff's RFC, the ALJ considered all relevant, credible evidence in the record, including the medical records, observations of Plaintiff's physicians and others, and Plaintiff's own description of her limitations. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004); Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). The ALJ moved analytically, from ascertaining the true extent of Plaintiff's impairments to determining the kind of work she could still do despite her impairments. The ALJ gave detailed consideration to the medical evidence of record before determining Plaintiff's RFC. See Lauer, 245 F.3d at 704 (although assessing claimant's RFC is primarily the ALJ's responsibility, "claimant's residual functional capacity is a medical question") (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

Indeed, the ALJ identified Plaintiff's functional limitations and restrictions, and then assessed her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). Upon doing so, the ALJ was required only to include Plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Only after defining Plaintiff's limitations and restrictions did the ALJ conclude that Plaintiff's restrictions did not preclude her from engaging in sedentary work with the additional limitations

assessing the level of a claimant's functioning." Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy.").

included in her RFC. The court finds that the ALJ's RFC determination is based on substantial evidence in the record as a whole and consistent with the requirements of the Regulations and case law.

**C.      Hypothetical to VE:**

The ALJ posed a hypothetical to a VE which included the limitations included in the RFC which the ALJ assigned to Plaintiff, and which described a person of Plaintiff's age and with her education. The VE responded that the person described in the hypothetical could perform work as a sticker, stuffer, and weight tester. Tr. 281. Plaintiff argues the ALJ posed an improper hypothetical to the VE.

An ALJ posing a hypothetical to a VE, however, is not required to include all of a claimant's limitations, but only those which she finds credible. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir.2006)); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. See Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (ALJ need not include complaints in hypothetical when complaints are not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v.

Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). Because the court has found the ALJ's RFC determination is based on substantial evidence and because hypothetical which the ALJ submitted to the VE included all of Plaintiff's limitations which the ALJ found credible and which she included in Plaintiff's RFC, the court finds that the ALJ submitted a proper hypothetical to the VE. Further, the court finds that the VE's response that there was work which Plaintiff could perform in the national economy provides substantial evidence to support the ALJ's denial of benefits to Plaintiff.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint (Docs. 1, 16) is **DENIED**;

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 14th day of July, 2014.

  /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE